UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,                    CASE NO.: 1:12cr54

        Plaintiff,                    Judge Michael R. Barrett

  -vs-

JOHN RANDY CALLIHAN,

        Defendant.

## OPINION AND ORDER

This matter came on for consideration of Defendant John Randy Callihan's Motion to Suppress Search and Seizure (Doc. 77), Defendant John Randy Callihan's Motion to Suppress Statements (Doc. 76), Defendant John Randy Callihan's Motion to Dismiss (Doc. 75), the Government's responses thereto (Docs. 78-80), and the facts adduced at the hearing held on April 21, 2014.

### Motion to Suppress Search and Seizure (Doc. 77)

Callihan seeks to suppress the search and seizure of his business and home based upon a search warrant dated November 15, 2010. (Doc. 77). As both parties agree that the premises in question were searched pursuant to a warrant, the question for the Court is whether there is sufficient probable cause contained in the Affidavit for Warrant. The parties also are in agreement on the applicable probable cause standards. Both parties acknowledge that a Court's determination of probable cause requires consideration of the "totality of the circumstances." *Illinois v. Gates*, 462 U.S. 213, 230-31, 103 S. Ct. 2317 (1983). Further, both parties agree that the test for probable cause is whether the information in the affidavit accompanying the application

Page **1** of **8**

"sets forth sufficient facts that would lead a prudent person to believe 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Gibson*, 928 F.2d 250, 253 (8th Cir. 1991) (quoting *Gates*, 462 U.S. at 238).

Defendant claims that Special Agent Robert Mullins did not make the requisite factual showing in the Affidavit as the operation and ownership of such clinics is not *per se* illegal. (Doc. 77, PAGEID# 189-90). The Affidavit is attached to Defendant's Motion to Suppress Search and Seizure (Doc. 77, PAGEID# 193-219),[1] and Government's Response (Doc. 79, PAGEID# 234-61) and was introduced as Government's Exhibit 1 at the hearing. The Affidavit focuses on an address in West Portsmouth, Ohio, which was the residence of John Callihan and his wife; an address in Lucasville, Ohio, which was the address of Lucasville Medical Specialists; and, an address in South Point, Ohio, which was a clinic operated by co-defendant, Dr. Christopher Stegawski. The Affidavit sets forth, in great detail, the width and breadth of the investigation (Doc. 77, PAGEID# 193-94) as well as background information regarding Defendants Callihan and Stegawski. (Doc. 77, PAGEID# 194-95).

A summary of the alleged probable cause, which begins on Doc. 77, PAGEID# 195, discusses the prices charged by Dr. Stegawski and Callihan as well as internet procedures for recruiting "Locum Tenens" to work at the clinic. (Doc. 77, PAGEID# 195-97). One such Locum Tenen, Dr. Henry Woodward, informed agents of the Ohio State Medical Board and the Pharmacy Board of his concerns regarding the clinic operations, which included Defendant Callihan instructing the doctor which prescriptions to write and in what doses. (Doc. 77, PAGEID# 197). According to the Affidavit, Dr.

---

[1] The Court will use the page numbers of Documents 75, 76 and 77.

Woodward further described the patients as cash paying friends of Defendant Callihan. (Doc. 77, PAGEID# 197). Dr. Woodward expressed concern for Callihan's involvement in Dr. Woodward's examinations. (Doc. 77, PAGEID# 196-97). Agents also interviewed employees of the clinic who discussed billing practices, paperwork and payment. (Doc. 77, PAGEID# 198-99). Beginning in February 2010, an undercover agent of the State Pharmacy Board posed as a patient. (Doc. 77, PAGEID# 199). This agent described in great detail the workings between Callihan and Dr. Stegawski, as well as the doctor's lack of proper medical procedures and the methods of payment. (Doc. 77, PAGEID# 199-200). The aforementioned activity occurred at Eastside Medical Specialists which operation, sometime between February 2010 and March 2010, moved to Lucasville and re-opened under the name of Lucasville Medical Specialists. (Doc. 77, PAGEID# 200).

On March 24, 2010, another undercover agent from the Bureau of Criminal Identification contacted Lucasville Medical Specialists and, while posing as a pharmacy owner, met with Dr. Stegawski. (Doc. 77, PAGEID# 200). As a result of this meeting, the agent determined that Dr. Stegawski and Callihan were equal partners and that the doctor saw 10 to 30 patients a day, five days a week. (Doc. 77, PAGEID# 200). On average, Dr. Stegawski wrote two narcotic prescriptions and one non-narcotic prescription per patient. (Doc. 77, PAGEID# 200). The agent further relayed Callihan's request to Dr. Stegawski that the doctor see up to 100 patients a day. (Doc. 77, PAGEID# 200). Later in the Spring, on April 29, 2010, the agent had telephonic contact with Callihan, who indicated he is currently dispensing medicine from Lucasville Medical Specialists and seeks to open his own pharmacy in order to fill prescriptions on a cash only basis. (Doc. 77, PAGEID# 200). On May 27, 2010, an undercover DEA agent

went to Lucasville Medical Specialists where he paid Callihan $200.00 for the visit and observed Callihan review medical records and paperwork. (Doc. 77, PAGEID# 201). On July 6, 2010, the same agent met with Dr. Stegawski regarding opening a pharmacy and was provided with the following information from him: Callihan had five businesses including a tire shop and a car wash as well as acting as the office manager of Lucasville Medical Specialists; and Dr. Stegawski himself prescribes 4 to 5 prescriptions per person from Lucasville Medical Specialists and patients pay $200.00 per visit. (Doc. 77, PAGEID# 201-02). Between July 2010 and September 30, 2010, another undercover agent from the Bureau of Criminal Investigation posed as a patient at Lucasville Medical Specialists where he was greeted by Callihan and presented Callihan with medical records, which Callihan reviewed. (Doc. 77, PAGEID# 202). The agent paid Callihan $200.00 in U.S. Currency. (Doc. 77, PAGEID# 202). During this visit the agent did not observe any medical supplies or equipment on the premises. (Doc. 77, PAGEID# 202). At the end of the visit, Dr. Stegawski wrote four prescriptions for the agent. (Doc. 77, PAGEID# 202). On his second visit, the agent again describes his contact with Callihan and Dr. Stegawski and his receipt of prescriptions, including Oxycontin and Vicodin. (Doc. 77, PAGEID# 202-03). On September 30, 2010, the agent returned to the office, again paid $200.00 and received additional prescriptions for Oxycontin and Vicodin from Dr. Stegawski. (Doc. 77, PAGEID # 203-04). None of the aforesaid agents suffered from any medical condition which would have required the issuance of prescriptions.

The agents also interviewed Locum Tenen, Dr. Cindy Lee, who worked at Eastside Medical Specialists. (Doc. 77, PAGEID# 204). Dr. Lee discussed the lack of

documentation, the large number of patients she saw, the lack of files and Callihan's involvement with the patients and Dr. Lee's examinations. (Doc. 77, PAGEID# 204-05).

Another former employee, Heidi Vice, provided officers with a videotaped interview wherein she discussed her work at Lucasville Medical Specialists, the number of patients Dr. Stegawski would see a day, the lack of examinations prior to prescription writing, and the amount of cash that changed hands was reported. (Doc. 77, PAGEID# 205-06). The Affiant further describes, in great detail, the cash transactions conducted by the Callihans (Doc. 77, PAGEID# 207-12). On October 4, 2010, a Scioto County Sheriff's Department Detective, John Koch, received a call from someone identifying himself as Callihan, who cited a number of complaints against Dr. Stegawski. (Doc. 77, PAGEID# 212-13).

Probable cause to search exists when "there is a fair probability that evidence will be found in a particular place." *United States v. Aljabari*, 626 F.3d 940, 944 (7th Cir. 2010) (citing *United States v. Anderson*, 450 F.3d 294, 303 (7th Cir. 2006); *Gates*, 462 U.S. at 238; *United States v. Reddrick*, 90 F.3d 1276, 1281 (7th Cir. 1996)); *see also United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (quoting *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985)). This is a "common-sense non-technical determination" that is based "not on individual facts in isolation but on the totality of the circumstances known at the time a warrant is requested." *Aljabari*, 626 F.3d at 944 (citing *United States v. Brack*, 188 F.3d 748, 755 (7th Cir. 1999); *Gates*, 462 U.S. at 238).

In this case there is sufficient information in the Affidavit for the Magistrate Judge to conclude that probable cause existed for the search of the premises known as

Lucasville Medical Specialists and the unnamed pain clinic operated by Dr. Stegawski. That is, probable cause existed that the prescriptions were not written or dispensed for legitimate medical reasons.  As for the search of the residence of Callihan and his wife, Stephanie, Agent Mullins further attested, based upon his knowledge and belief, that persons involved in this type of illegal activity are known to keep financial records and other items of criminal intent at their residences.  (Doc. 77, ¶ 59, PAGEID# 214).  That attestation provides a sufficient nexus to search the Callihans' residence.  Moreover, "[s]imple common sense supports the inference that one likely place to find evidence of a crime is the suspect's home" where, as here, there is no information indicating to the contrary.  *Aljabari*, 626 F.3d at 945 (citing supporting caselaw).

Agent Mullins also testified at the hearing that Stephanie Callihan gave consent to search the West Portsmouth residence.  That consent was not given, however, to the testifying agent.

Based upon the foregoing, the Court finds probable cause existed for the search and seizure of Callihan's business and home, and thus, the motion to suppress (Doc. 77) is denied.

### Motion to Suppress Statements (Doc. 76)

Callihan also moves for suppression of any statements made to law enforcement. (Doc. 76). Callihan's Motion is premised upon counsel's understanding of his client's custodial status.  The Government counters, in its pleading (Doc. 80, PAGEID# 263) and confirms through Agent Mullins' testimony at the hearing, that sometime in early October 2010 Detective Koch of the Portsmouth Police Department was contacted by Defendant Callihan who supplied Detective Koch with information

regarding Dr. Stegawski. This was plainly a non-custodial conversation occurring at the Callihan's request. Agent Mullins further indicates that at the time of the search warrant execution on November 18, 2010, Callihan was not under arrest and was free to leave provided, however, that if he did leave he would not be permitted to return. Callihan discussed with the agents the Locum Tenens and at some point asked to speak with his attorney, Michael Mearan. After that request, no further discussion occurred between the agents and Callihan. Although Callihan was not Mirandized, he was under no constraint and was free to leave, which created a non-custodial situation. At the time of Callihan's arrest on May 17, 2012, he was Mirandized and, while irate and argumentative, he made no incriminating statements but did make comments personal to the agents. Based upon the foregoing, the motion to suppress (Doc. 76) is denied and none of the foregoing statements are suppressed. The statements, however, remain subject to motions in limine at trial.

## **Motion to Dismiss (Doc. 75)**

Callihan further moves to dismiss the Indictment (Doc. 75). The Court considered this Motion as well as the Government's response (Doc. 78). The Defendant's simple contention is that Dr. Stegawski was a licensed physician. There was nothing illegal *per se* regarding the pain clinics. The Defendant side-steps the fact that the Indictment (Doc. 3) charges that both Defendants, Callihan and Stegawski, knowingly and intentionally agreed to unlawfully distribute and dispense or possess with intent to distribute and dispense control substances not for legitimate medical purpose and outside the scope of medical practice in violation of 21 U.S.C. §846, 841(a)(1) (Doc. 3, Count 1). The Indictment alleges that premises were maintained for the unlawful

distribution.  (Doc. 3, Counts 2, 3, 4).  The remaining Counts deal with money laundering allegations.  Whether Dr. Stegawski was licensed and whether pain clinics can operate legally may come into play during the defense of the case but it does not result in dismissal of the Indictment.  Therefore, Defendant's Motion to Dismiss (Doc. 75) is denied.

## CONCLUSION

Consistent with the foregoing, Defendant's Motion to Suppress Search and Seizure (Doc. 77), Motion to Suppress Statements (Doc. 76), and Motion to Dismiss (Doc. 75) are **DENIED**.

**IT IS SO ORDERED**.

s/ Michael R. Barrett
Michael R. Barrett, Judge
United States District Court